**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Case No. 21 C 3653 |
| | Judge Sunil R. Harjani |
| GLENCREST HEALTHCARE & REHABILITATION CENTRE, LTD., and FRANK HAYS, as Administrator of the Estate of Sarah Quinn, Deceased, | |
| Defendants. | |
| FRANK HAYS, as Administrator of the Estate of Sarah Quinn, Deceased, | |
| Plaintiff/Judgment Creditor, | |
| v. | Case No. 22 C 1697 |
| | Judge Sunil R. Harjani |
| NATIONAL FIRE & MARINE INSURANCE COMPANY, | |
| Defendant/Citation Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Frank Hays, as Administrator of the Estate of Sarah Quinn, filed a complaint on October 30, 2017 in the Circuit Court of Cook County, Illinois alleging state law claims for violation of the Nursing Home Care Act (the "Act"), negligence, wrongful death and survival due to failure to meet the standard of care at Quinn's skilled nursing facility, which was operated by Glencrest Healthcare & Rehabilitation Centre, Ltd. On December 10, 2021, a final judgment was entered in favor of Hays on all counts against Glencrest in *Frank Hays, as Administrator of the Estate of Sarah Quinn v. GlenCrest Healthcare & Rehabilitation Centre, Ltd.*, Case No. 17 L 011002 ("*Hays*

Lawsuit") in the Circuit Court of Cook County. Hays was awarded $225,000 in damages, attorneys' fees in the amount of $666,000, and costs in the amount of $43,232.13, for a total amount of $934,232.12. Glencrest was an additional insured under the applicable insurance policy issued by National Fire & Marine Insurance Company ("NFM") during the relevant time period. Before the Court are a number of motions filed by the parties in these two related cases. Both cases involve NFM's claims that it owes no duty to indemnity Glencrest with respect to the judgment rendered against Glencrest and in favor of Hays. All parties now move for summary judgment. For the reasons that follow, Glencrest's motion for summary judgment [113] in Case No. 21 C 3653 is denied, Hays' motions for summary judgment [115] in Case No. 21 C 3653 and [32] in Case No. 22 C 1697 are granted in part and denied in part, and NFM's motion for partial summary judgment [117] is granted in part and denied in part.

## **BACKGROUND**[1]

All material facts discussed herein are undisputed unless otherwise indicated. Other facts will be discussed in the memorandum in context.[2]

---

[1] The facts set forth herein come from the parties' Local Rule 56.1 statements and related exhibits. The Court cites to docket entries in Case No. 21 C 3653. The Court considers the facts in the light most favorable to the nonmovant. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

[2] As an initial matter, the parties made various Local Rule 56.1 and evidentiary objections. In response to NFM's Local Rule 56.1 Statement of Facts, Hays objected that several of NFM's statements improperly: set forth multiple sentences in violation of Local Rule 56.1(d)(1); concern the content or meaning of the Policy which is "not a fact," in violation of Local Rule 56.1(d); and improperly contain argument in violation of Local Rule 56.1(d)(4). "[T]he decision whether to apply the [local] rule[s] strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (internal quotes and citation omitted); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). Moreover, "[i]t is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the record offered in support of the statement." *Hartford Fire Ins., Co. v. Henry Bros. Construction Management Services, LLC*, 2014 WL 4269057, at *1 n.1 (N.D. Ill. Aug. 28, 2014). Finally, "[t]he Court is capable of disregarding statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, or contain unfounded, irrelevant, or unsupported assertions of fact." *Oxford*

The Court begins with the language of the subject insurance policy. NFM issued a Senior Care Primary Liability policy with a policy period from June 1, 2015, to June 1, 2016 ("Policy") to Glen Health and Home Management, Inc. ("Glen Health"). Dkts. 126-1 ¶ 7; 127 ¶ 7. Glen Health is the parent company of Glencrest, and Glencrest is listed as an additional named insured under the Policy. *Id*. at ¶ 8. The Policy contains a Professional Liability-Senior Care coverage form and a Commercial General Liability-Senior Care Coverage form. *Id*. at ¶ 9.

The Policy also contains a Self-Insured Retention Endorsement ("SIR"). The SIR Endorsement provides in relevant part as follows:

> **SENIOR CARE PRIMARY LIABILITY POLICY SCHEDULE**
> **1. Self-Insured Retention Amount**
> **a.** Each Incident, Each Occurrence, Each Event
> $250,000 for Glenshire
> $100,000 all other locations
> **b.** Aggregate Not Applicable
> **c.** Maintenance Retention Not Applicable

---

*Bank & Trust and Fifth Ave. Property Management v. Village of La Grange*, 879 F.Supp.2d 954, 960 (N.D. Ill. 2012).

As to Hays' Local Rule 56.1(d)(1) "compound" objection, "[t]here is no categorical prohibition of paragraphs containing multiple sentences or multiple facts." *Jackson v. City of Chicago*, 2024 WL 1142015, at *2 (N.D. Ill. Mar. 15, 2024); *Molina v. Latronico*, 2024 WL 1376500, at *2 (N.D. Ill. Mar. 31, 2024) ("[The Local Rule does not require each statement of material fact be limited to one statement of fact or a single sentence."). Thus, the Court in its discretion overrules Hays' "compound" objection to statements that include multiple sentences. *See Nettles-Bey v. Burke*, 2015 WL 4638068, at *5 (N.D. Ill. Aug. 4, 2015) (concluding that the plaintiff properly combined sentences because "the sentences [were] all clearly interrelated so that it would make no sense to split them into separate paragraphs"). The Court will disregard legal arguments in the statement of facts, including improper legal conclusions or argument concerning the meaning of the Policy. *See* LR 56.1(e)(2); *Judson*, 529 F.3d at 382 n.2 ("[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts.").

NFM identifies two defects in Hays' Local Rule 56.1(b)(2) response: (1) paragraphs 11, 12, 14, 15, 16, 22, 23, 24, and 26 improperly contain additional facts and argument and (2) paragraphs 13 and 25 deny certain facts without citing any record support. Similarly, NFM argues that Glencrest's Local Rule 56.1(b)(2) responses to paragraphs 2, 14, 16, 24, and 26 improperly contain additional facts and argument and paragraphs 14 and 24 deny certain facts without citing any record support. The Court disregards denials that contain new facts not found in Hays' or Glencrest's Local Rule 56.1(b)(3) statements of additional facts in response to NFM's summary judgment motion or Hays' or Glencrest's Local Rule 56.1(a)(2) statements in support of their summary judgment motions. The Court does not consider improper legal arguments in the responses to NFM's statement of facts. *See* LR 56.1(e)(2). Finally, any factual denials without citation to evidence will be deemed admitted. LR 56.1(e)(3).

\* \* \* \*

**Section I. SELF INSURED RETENTION**
**A.** Our total liability under this policy is limited as described in Section **III – LIMITS OF INSURANCE** of the attached Coverage Parts. These limits of insurance will apply in excess of the amounts scheduled in Item 1.a. of the Schedule above.
**B.** We shall have no obligation for, or any responsibility to pay, any amounts owed by any **"insured"** within the Self-Insured Retention. Our obligations under this policy shall only attach once you have satisfied these terms and paid the Self-Insured Retention amount, which is a condition precedent to coverage in this policy.

*Id*. at ¶ 10. Pursuant to the Policy's SIR Endorsement, Glencrest is responsible for all amounts owed up to a $100,000 Self-Insured Retention limit. Dkts. 126-1 ¶ 11; 127 ¶ 11. Pursuant to the SIR, Glencrest is "obligated to provide for the defense, investigation, and settlement of any offense, 'occurrence', **'claim'** or **'suit'** that may be covered by this policy and is within the Self-Insured Retention. [GlenCrest is] also obligated to accept and pay any reasonable settlement offer within the Self-Insured Retention." *Id*. Glencrest's obligations under the Policy's SIR Endorsements apply to both defense costs and damages. *Id*. at ¶ 12. Within that $100,00 limit, Glencrest was authorized to hire counsel of its choice. Dkt. 133 at 4, ¶ 19.

Relevant here, the Policy further states that: "Once the Self-Insured Retention has been satisfied pursuant to the terms and conditions of this endorsement, your obligations terminate and we will assume the defense pursuant to the terms and conditions of this policy." Dkt. 116-1 at 58. The Policy did not impose a duty to defend upon NFM as to the *Hays* Lawsuit but did give NFM the right to assume control of Glencrest's defense of the case. Dkt. 133 at 5, ¶ 22.

The Policy includes other pertinent provisions:

**Professional Liability**
**Section I. COVERAGES**

**A. Insuring Agreement**

4

**1.** We will pay on behalf of the "insured" those sums that the "insured" becomes legally obligated to pay as damages because of injury caused by an "incident" to which this insurance applies, but the amount we will pay for damages is limited as described in Section **III – LIMITS OF INSURANCE**.

**Commercial General Liability**
**Section I. COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
a. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

Dkt. 116-1 at 30, 35. The "Defense Provisions" of the Policy provide in relevant part:

**Section II. DEFENSE PROVISIONS**

\* \* \*

**C.** When we assume the defense of any "claim" against the "insured" that seeks damages covered by this policy:
**1.** We may negotiate and settle any "claim" as we deem expedient; and
**2.** We will pay covered "defense expenses".

The definition of "Defense Expenses" includes:

**5.** All court costs taxed against the "insured" in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

*Id*. at 7, 32.

Finally, the Policy contains other clauses providing that: Glencrest was prohibited from incurring any expenses in excess of $100,000 without the consent of NFM; Glencrest must cooperate with NFM in the investigation, settlement or defense of a claim or suit; if NFM does exercise its right to assume Glencrest's defense, it does so at its own expense and with counsel of its choice; and Glencrest's insolvency or inability to pay any amounts within the SIR does not alter NFM's obligations under the Policy. Dkt. 151 at 5, ¶¶ 20, 23-24; Dkt. 162-1 at 1-2, ¶ 2.

5

With this background on the Policy, the Court turns to the state court action. Hays filed his lawsuit on October 30, 2017, arising from Quinn's death on November 10, 2015, asserting claims against GlenCrest, Vivek Gupta, M.D., and Christine Adique, N.P. for violation of the Nursing Home Care Act, negligence, wrongful death and survival, alleging that GlenCrest failed to meet the standard of care with respect to Quinn. Dkts. 126-1 ¶ 17; 127 ¶ 17. In his Complaint, Hays sought "judgment in excess of $100,000 plus attorneys' fees and costs as provided by Statute." *Id.*

Glen Health initially hired the law firm Langhenry, Gillen, Lundquist and Johnson, LLC (the "Langhenry Law firm") to defend Glencrest in the *Hays* Lawsuit. Dkt. 151 at 8, ¶ 38. The Langhenry Law Firm specializes in defending nursing home and senior living cases. Dkt. 162-1 at 8, ¶ 18. On September 29, 2020, Attorney Charles Silverman filed an appearance as additional counsel for Glencrest in the *Hays* Lawsuit. *Id.* at 9, ¶ 41. On October 27, 2020, the Langhenry Law Firm filed a motion to withdraw as counsel for Glencrest, which was granted on November 5, 2020. Dkt. 151 at 8, ¶ 42. Glencrest claims it changed defense counsel because it could no longer afford the Langhenry Law Firm. On June 28, 2021, NFM assumed the defense of Glencrest and appointed Attorney John Patton to lead Glencrest's defense. Dkt. 151 at 13, ¶ 64. Hays claims that NFM assumed Glencrest's defense due to Glencrest's insolvency. NFM disputes this assertion, asserting that it took over the defense because Glencrest breached the duty of cooperation.

According to NFM, Glencrest's actions, through Silverman, including failing to present a competent defense to Hays' claims, waiving the jury demand, agreeing to Hays' late disclosure of expert witnesses, failing to identify expert witnesses in defense of Hays' claims (including Glencrest's retained expert Dr. Richard Viglione engaged by the Langhenry Law Firm), failing to

timely and competently report on the status of the lawsuit, taking positions against GlenCrest and National Fire's interests, and making misrepresentations to the court, were breaches of the cooperation clause in the Policy. Glencrest does not dispute that it owed an obligation to cooperate with NFM in the defense, settlement, and investigation of the *Hays* Lawsuit. Instead, Glencrest argues that it adequately and frequently communicated to NFM that it could not afford to hire an expert and there was no breach of the duty to cooperate in waiving Hays' late disclosure of experts and a jury trial.

Hays' claims were tried in a bench trial before Judge Israel A. Desierto on June 30, 2021. Dkts. 126-1 ¶ 18; 127 ¶ 18. Because Judge Desierto barred Glencrest's retained expert Dr. Viglione from testifying, Glencrest, through Patton, presented the Offer of Proof/Sworn Statement of Dr. Viglione which contained Dr. Viglione's opinions. Dkt. 162-1 at 26-28, ¶ 54. On August 27, 2021, Judge Desierto entered an order in relevant part as follows:

> 1. The Court having considered all the evidence, the Court finds in favor of the Plaintiff, FRANK HAYS, as Administrator of the Estate of SARAH QUINN, Deceased, and against Defendant, GLENCREST HEALTHCARE & REHABILITATION CENTRE LTD., and awards damages in the amount of $225,000.00
>
> 2. Plaintiff is allowed until September 8, 2021 to file his petition for attorneys' fees, costs and expenses.

*Id*. at ¶ 19. In his oral ruling, Judge Desierto stated:

> I find that the defendant failed to provide adequate personal care assistance with activities of daily living that are necessary to avoid physical harm and mental anguish. The testimony supports it, even if you were to consider Viglione. Dr. White and Dr. Gorbien, even considering Dr. Viglione, were unimpeached. It wasn't dying that was the issue, it was the manner in which the Nursing Home Care Act directs those the defendant and their staff in their treatment of Ms. Quinn.

Dkt. 162-2 at 257:12-21.

On October 20, 2021, Hays filed his petition for attorneys' fees and costs pursuant to 210 ILCS 45/3-602. Dkts. 126-1 ¶ 20; 127 ¶ 20. On December 10, 2021, Judge Desierto entered a final judgment order in favor of Hays on all three counts of his Complaint against Glencrest, and awarded $225,000 in damages, attorneys' fees in the amount of $666,000 and "costs and expenses in the amount of $43,232.13," for a total amount of $934,232.12 ("*Hays* Judgment"). *Id*. at ¶ 21; Doc. 119-5.

## PROCEDURAL HISTORY

NFM filed its suit (Case No. 21 C 3653) on July 9, 2021 to determine the rights and obligations of the parties with respect to the then-pending *Hays* Lawsuit. Specifically, NFM seeks a declaration as to whether it owes a duty to indemnity its insured, Glencrest, for the *Hays* Judgment. Hays filed his post-judgment citation proceeding (Case No. 22 C 1697) on April 1, 2022, seeking to satisfy the *Hays* Judgment against NFM. Hays seeks the turnover of insurance proceeds NFM holds on behalf of Glencrest.[3]

In NFM's case, NFM, Hays, and Glencrest seek summary judgment. NFM argues it is entitled to partial summary judgment on three issues: (1) NFM has no indemnity obligation under the Policy until Glencrest satisfies the SIR; (2) the Policy does not cover the award of attorneys'

---

[3] On February 5, 2021, NFM brought a lawsuit in this district against Glen Health and its Officer and President (Daniel Glenner), and Officer and Secretary (Lisa Glenner) seeking, among other things, payment of the amounts due in excess of $1,103,566.91 for unpaid settlements on 13 claims related to actions which had been filed against various Glen Health entities in the Circuit Court of Cook County, Illinois, Law Division pursuant to the SIR Endorsement contained within Glen Health's Commercial General Liability, Senior Care Primary Liability insurance policies. *See* Case No. 21 C 691, Dkt. 1. NFM also requested a declaratory judgment, including an order enforcing Glen Health's SIR obligations, its duty to defend 13 remaining cases, and its duty to pay defense costs subject to the SIR. NFM's complaint alleged, in part, that "Glen Health refuses to pay" "defense costs in those matters where the applicable SIR amount has not been exhausted." *Id*. at ¶ 22. NFM further alleged that "[d]ue to Glen Health's failure to pay, counsel for Glen Health in these matters has withdrawn from representing Glen Health." *Id*. The complaint also included allegations that Glen Health "has not undertaken any of its obligations to defend itself and pay reasonable settlement amounts within the SIR." *Id*. at ¶ 35.

fees and costs entered against Glencrest; and (3) Glencrest's affirmative defenses of unclean hands, breach of fiduciary duty, and public policy fail as a matter of law.

Hays sets forth five main arguments in moving for summary judgment on NFM's claims. Hays argues that: (1) NFM is estopped from asserting any coverage defenses; (2) NFM's obligation to pay the *Hays* Judgment is not precluded by Glencrest's alleged failure to satisfy the SIR; (3) NFM cannot demonstrate substantial prejudice as a result of Glencrest's alleged breach of its duty to cooperate; (4) NFM's failure to timely and specifically reserve its right to disclaim attorneys' fees precludes it from denying coverage for the attorneys' fees award; and (5) the Policy covers attorneys' fees awarded under the Nursing Home Care Act.[4]  Hays filed a substantially identical summary judgment motion in its case. *See* Case No. 22 C 1697, Dkt. 32-1.

The arguments raised in Glencrest's motion for summary judgment can be distilled down to three main issues: (1) whether Glencrest breached the cooperation clause; (2) whether NFM timely reserved its rights to disclaim the attorneys' fees award; and (3) whether the attorneys' fees award is part of the damages owed.[5]

---

[4] Although Hays purports to move for summary judgment on all claims asserted by NFM, Hays' motion does not address NFM's allegation that Glencrest breached its implied duty of good faith and fair dealing as to the Cooperation Clause, which survived Glencrest's motion to dismiss. Doc. 44 at 15.  Accordingly, Hays is not entitled to summary judgment on this allegation, which is not an independent claim but instead an allegation contained within NFM's declaratory judgment claim on the Policy.

[5] While the final portion of Glencrest's motion seeks summary judgment on a bad-faith settlement claim related to NFM's refusal to settle the *Hays* Lawsuit and disclaimer of attorneys' fees, Glencrest's amended counterclaim fails to allege a bad-faith claim based on a duty to settle. Doc. 113 at 11-13.  Indeed, no mention of "bad faith" or "duty to settle" is made in the whole amended counterclaim. Doc. 52. Specifically, Glencrest alleges four counts: (1) Declaratory Judgment seeking an order that NFM is obligated to pay the entirety of the *Hays* Judgment (minus the portion of the SIR that remains to be paid), including the award of attorney's fees and costs; (2) Breach of Duty to Indemnify seeking an order finding that NFM has a duty to  indemnify Glencrest and breached that duty; (3) Breach of Contract alleging that "[t]he complained of behavior constitutes a breach of NFM contracts with Glencrest"; and (4) a claim that NFM violated 215 ILCS 5/155 for its alleged "vexatious and unreasonable" failure to indemnify Glencrest. *Id*. The amended counterclaim's passing references to Glencrest's recommendation to settle *Hays* and NFM's failure to settle did not put NFM on notice of a breach of the "duty to settle" claim as a separate claim in this lawsuit.  Glencrest cannot add such a tort claim by simply arguing it exists and moving for

9

The Court will address each of these issues in turn.

## **DISCUSSION**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: the court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). Finally, "[t]he existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC. v. Int'l Union of Operating Eng'rs, Local Union 150, ALF-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

A federal court sitting in diversity over an insurance coverage dispute "must attempt to resolve the issues in the same manner as would the highest court of the state that provides the applicable law." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013) (internal quotes and citation omitted). The parties agree that Illinois law governs this

---

summary judgment. But even if Glencrest pleaded such a claim (which it has not), summary judgment would not be warranted in Glencrest's favor because it has not shown that there is no genuine issue of material fact regarding whether NFM breached the duty to settle. *See* Doc. 153 at 13-14.

dispute. Under Illinois law, "the proper interpretation of an insurance policy is a question of law." *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023); *Zurich Am. Ins. Co. v. Infrastructure Engineering, Inc.*, --- N.E.3d ----, 2024 WL 4231570, at *6 (Ill. S.Ct. 2024) ("C]onstruction of the terms of an insurance policy is a question of law properly decided on a motion for summary judgment."). In examining the terms of the policy, "the normal rules of contract interpretation apply." *Wynndalco*, 70 F.4th at 995; *see also Hess v. Est. of Klamm*, 161 N.E.3d 183, 187 (Ill. S.Ct. 2020). The primary objective in interpreting an insurance policy is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.,* 20 F.4th 311, 319 (7th Cir. 2021) (citing *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. S.Ct. 2019)). The policy's provisions must be viewed as a whole, and meaning must be given to each provision. *Wynndalco*, 70 F.4th at 995 (citing *Founders Ins. Co. v. Muñoz*, 930 N.E.2d 999, 1004 (Ill. S.Ct. 2010)). Provided there is no ambiguity, policy terms will be given their plain and ordinary meaning and applied as written. *Id.*; *Mashallah*, 20 F.4th at 319.

In Illinois, "the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. S.Ct. 2009). "Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Id*; *Farmers Auto. Ins. Ass'n v. Gitelson*, 801 N.E.2d 1064, 1071 (Ill. App. 2003) (noting "two well-established tenets of insurance law: the insurer bears the burden of establishing that a claim falls within a provision that limits or excludes coverage; and the insured bears the burden to show that a claim falls within a policy.").

11

## I.     Self-Insured Retention

NFM does not dispute that its Policy covers the claims at issue in the *Hays* Lawsuit.  NFM seeks a declaration, however, that it has no indemnity obligation to Glencrest for the *Hays* Judgment until Glencrest first performs the condition precedent by paying the SIR amount in connection with that claim.  In moving for summary judgment, NFM argues that Glencrest has not raised a genuine issue of fact on the issue of Glencrest's failure to meet the SIR.  NFM also seeks a declaration that Glencrest is responsible to actually pay the $100,000 pursuant to the SIR Endorsement.  Hays cross-moves for summary judgment on the issue of whether NFM's obligations to indemnify Glencrest for the *Hays* Judgment arise unless and until Glencrest pays the full amount of the SIR.  Hays argues that NFM's contention that Glencrest's failure to satisfy the SIR is a condition precedent to coverage violates the terms of the Policy and Illinois public policy.

With the above standards in mind, the Court turns to the Policy provisions at issue.  To start, Section I(B) of the SIR Endorsement in the Policy provides that NFM "shall have no obligation for, or any responsibility to pay, any amounts owed by any **"insured"** within the Self-Insured Retention." Dkt. 116-1 at 56.  Section I(B) continues: NFM's "obligations under this policy shall only attach once [Glencrest has] satisfied these terms and paid the Self-Insured Retention amount, which is a condition precedent to coverage in this policy." *Id*. at 56-57.  Under Illinois law, "[a] condition precedent is one which must be performed before . . . the other party is obligated to perform.  If the condition precedent remains unsatisfied, the obligations of the parties are at an end." *Lester v. Resolution Trust Corp.*, 994 F.2d 1247, 1254 (7th Cir. 1993) (quoting *McKee v. First Nat'l Bank of Brighton*, 581 N.E.2d 340, 345 (Ill. App. 1991)).  NFM argues that

the SIR Endorsement requires Glencrest to pay the full amount of the $100,000 SIR before NFM

has an indemnity obligation to Glencrest.

In contrast, Hays cites two additional provisions in Section V of the SIR Endorsement (the

"Bankruptcy Insolvency Provision"):

> **A.** The insured's bankruptcy, insolvency or inability to pay any amounts within
> the Self-Insured Retention shall not increase our Limits of Insurance under the
> policy and our obligation to pay damages will continue in accordance with the terms
> and conditions of this endorsement.
>
>                 \* \* \*
>
> **C.** If we assume the control of defense and/or settlement of any "claim" or "suit"
> within the Self-Insured Retention due to the bankruptcy or insolvency of an
> "insured", then "defense expenses" that you otherwise would have been obligated
> to pay within the Self-Insured Retention will erode the applicable Limits of
> Insurance of this policy.

Dkt. 116-1 at 59. Hays contends that under these provisions, NFM's obligation to fund the defense,

settlement, or any judgment in excess of the SIR is not extinguished as a result of Glencrest's

inability to pay and at most, NFM may erode its available limits by the amount of the SIR left

unpaid.

The unambiguous language of the SIR Provision makes clear that NFM has no obligation

under the Policy for the *Hays* Judgment until Glencrest first performs the condition precedent by

paying the SIR amount. *See Home Ins. Co. of Illinois v. Hooper*, 691 N.E.2d 65, 70 (Ill. App. 1998)

(holding "the unambiguous language of the self-insured provision contained in the instant policy

would release [the insurer] from the obligation of payment under the policy due to the [insured]

bankruptcy."). Section V(A) of the Bankruptcy Insolvency Provision applies only to obligations

to pay damages subject to "the terms and conditions" of the endorsement. By referring to NFM's

obligation to pay damages "in accordance with the terms and conditions of this endorsement,"

Section V(A) clearly references limitation provisions elsewhere in the endorsement, including the

SIR Provision. Thus, Section V(A) is plainly subject to the limitations in the SIR Provision. The SIR Provision, in contrast, contains no limiting language; NFM's indemnity obligation "*shall only attach once*" the SIR is met, which is a condition precedent to NFM's obligation to pay damages in excess of the SIR. The Court reads these provisions to mean that NFM is still liable above the SIR amount, but only after Glencrest pays the full amount of the SIR.

However, if Glencrest is insolvent or unable to pay the SIR amount, the SIR Provision cannot be enforced because it is not consistent with the public policy of Illinois. The *Hooper* case addressed this precise issue and construed language similar to that contained in the Policy here.[6] There, the Illinois Appellate Court applied Section 388 of the Illinois Insurance Code, which provides:

> No policy of insurance against liability or indemnity for loss or damage to any person other than the insured, for which any insured is liable, shall be issued or delivered . . . unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from payment of damages for injuries sustained.

215 ILCS § 5/388. In *Hooper*, a liability insurer sought a declaratory judgment that payment pursuant to a self-insured retention provision in the policy with its bankrupt insured was a condition precedent to the payment of any claims by the insurer. There, the self-insured retention provision required the insured to make actual payment of the first $250,000 of any settlement or judgment against it as a condition precedent to the insurer's liability to pay damages in excess of the self-insured retention amount. *Id.* at 66-67. Rejecting the insurer's position, the *Home Insurance* court held that the insurer was liable for amounts in excess of the $250,000 self-insured retention up to the policy limit, regardless of the insured's inability to pay the claimed retention

---

[6] The policy in *Home Insurance* contained the following provision: "[b]ankrutpcy or insolvency of the named insured . . . shall not relieve the company of any of its obligations hereunder." *Home Ins. Co. of Illinois*, 691 N.E.2d at 70.

amount. *Id.* at 70. In so holding, the court noted that the operative effect of the self-insured retention provision in the insurance policy was "directly contrary to the public policy as declared by the legislative enactment of section 388." *Id.* In interpreting the meaning of Section 388 with regard to the excess insurer, the Illinois appellate court held that "[t]he plain language of section 388 makes clear the legislative intent to prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy." *Id.* at 69-70. Similarly here, NFM is obligated to indemnify Glencrest for the portion of the *Hays* Judgment exceeding $100,000, regardless of Glencrest's alleged inability to pay the SIR amount.

NFM argues that *Hooper* is distinguishable because the insured there filed for bankruptcy and it was established that the insured was unable to pay anything for defense or indemnity. NFM's attempt to distinguish *Hooper* is unavailing. The public policy Illinois implemented by enacting Section 388 requires that liability policies contain a provision which guarantees that the "insolvency or bankruptcy" of the insured shall not relieve the insurer of its obligations under the policy and the policy in *Hooper* contained similar language. There is nothing in the court's analysis in *Hooper* that suggests that the result would have been different if the insured had been insolvent but had not filed for bankruptcy. Moreover, the *Hooper* court specifically held that the insurer was obligated to indemnity the insured for the portion of the judgment or settlement exceeding the SIR, "irrespective of [the insured's] inability to pay the claimed retention amount." *Home Ins. Co. of Illinois*, 691 N.E.2d at 70. Here, Glencrest's "bankruptcy, insolvency or inability to pay" the SIR does not relieve NFM of its obligations to pay damages. Neither Section 388 nor the *Hooper* decision support NFM's argument that Illinois' public policy protects third-party claimants in the event of the insured's bankruptcy but not insolvency or inability to pay the SIR.

In addition, NFM asserts that Hays has failed to establish that Glencrest was then or is now insolvent or unable to pay the SIR.  Hays contends that Glencrest's and Glen Health's financial difficulties were clearly known to NFM as early as September 2020.  On the one hand, construing the evidence in Hays' favor, Silverman's appearance as additional counsel for Glencrest in September 2020 supports a finding that Glencrest did not have sufficient funds to meet the Langhenry Law Firm's expenses.  Hays and Glencrest claim that Glencrest changed defense counsel from the Langhenry Law Firm to Silverman because it could no longer afford the Langhenry Law Firm.  Moreover, on October 16, 2020, NFM threatened Glen Health and its related entities with involuntary bankruptcy due to Glencrest's failure to pay indemnity on numerous settlements and failure to pay defense costs from various lawsuits.  NFM's filing of the Glen Health declaratory judgment lawsuit (Case No. 21 C 691) further supports an inference that Glencrest was insolvent or unable to pay the SIR.

On the other hand, construing the evidence in NFM's favor, there is evidence Glencrest had the ability to pay the remaining portion of the SIR because after the Langhenry Law Firm withdrew, Glencrest paid Silverman and Attorney Jonathan Lubin to defend *Hays*, Glen Health remains a corporation in good standing, and Glen Health had the apparent financial means to retain two different law firms (including Much Shelist) and pay three expert witnesses in the related federal court proceeding (Case No. 21 C 691).  Notably, none of the parties in this case, as opposed to the related federal court case, presented a financial expert on the solvency or inability to pay issue.  Based on this record, genuine issues of material fact exist as to whether Glencrest's financial condition was the actual reason for its failure to pay amounts within the SIR. Dkt. 116-2 at 21-22; Dkt. 116-5 at 35; Dkt. 116-6; Dkt. 150 at 11-12, ¶ 37; Dkt. 150 at 13, ¶ 45; Dkt. 151 at 2-3, 9-10, 13-14, ¶¶ 8, 43, 45, 47, 65; Dkt. 160, at 55-57, ¶¶ 66-67, 69.  As a result, this is a question of fact

for the jury. *Briggs v. Treatment Assessment Screening Ctr. Inc.*, 562 F. Supp. 3d 168, 173 (D. Ariz. 2021) (rejecting defendant's request that the court "make what is inherently a factual determination—weighing the evidence and determining the truth of [p]laintiffs' alleged inability to pay—precisely the kind of inquiry that summary judgment forbids."); *In re KZK Livestock, Inc.*, 290 B.R. 622, 626 (C.D. Ill. 2002) ("The determination of insolvency generally presents complex factual determinations that seldom lend themselves to disposition by summary judgment."). In sum, neither party has satisfied its burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law on the solvency or inability to pay issue. Accordingly, NFM and Hays are denied summary judgment on this issue.

Finally, NFM seeks a declaration that Glencrest is responsible to pay the $100,000 pursuant to the SIR endorsement. NFM and Hays dispute whether it is actual payment of the SIR amount or costs incurred that is required for Glencrest to satisfy the SIR. As of December 16, 2020 and prior to trial, Glencrest incurred $93,567.00 in defense costs, of which Glencrest has paid $32,339.86. Dkt 127 at 7, ¶ 15. Hays contends that "[a]lmost certainly, Glencrest exhausted the $100,000." Doc. 115-1 at 8. Hays' position is contrary to the plain language of the Policy, which unambiguously states that NFM's obligations under the Policy "only attach once you have satisfied these terms and *paid* the Self-Insured Retention amount." Dkt. 116-1 at 56-57 (emphasis added). At the same time, GlenCrest was also required to pay any amounts due under the SIR that NFM "consider[ed] necessary to complete the settlement or defense" of the *Hays* Lawsuit in the event NFM elected to take over the defense of the claim. *Id.* at 58. NFM decided to take over the defense of *Hays* and demanded GlenCrest pay the remainder of the SIR, but GlenCrest failed to do so. Dkt. 160 at 46-47, ¶ 50. The Court therefore finds GlenCrest has a duty under the Policy to pay all defense costs within the SIR. As a result, NFM is entitled to summary judgment on this issue.

## II.     The Award of Attorneys' Fees and Costs

Glencrest seeks indemnity for the attorneys' fees and costs awarded to Hays and against it in the *Hays* Judgment. Hays and Glencrest move for summary judgment on the issue of whether NFM provided timely and proper notice of its reservation of rights to deny coverage as to an award of attorney's fees. They argue that NFM is estopped from asserting its noncoverage defense to attorneys' fees fails because it failed to specifically or timely reserve its rights as to attorneys' fees. Their estoppel argument fails. "[T]he majority rule is that 'an excess insurer who has no duty to investigate coverage issues or defend its insured will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights.'" *Great Am. Ins. Co. v. State Fire & Cas. Co.*, 2023 WL 2745076, at *4 (N.D. Ill. Mar. 31, 2023), *aff'd sub nom*. *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th 1011 (7th Cir. 2024) (quoting *Int'l Ins. Co. v. Sargent & Lundy*, 609 N.E.2d 842, 855 (Ill. App. 1993)); *see also North River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 860 N.E.2d 460, 467 (Ill. App. 2006); *Montgomery Ward and Co., Inc. v. Home Ins. Co.*, 753 N.E.2d 999, 1006 (Ill. App. 2001). Here, it is undisputed that NFM is an excess insurer and its duties to defend under the Policy were not triggered because Glencrest has not exhausted the $100,000 SIR. Doc. 116-1 at 58. Thus, no reservation of rights was required. As a matter of law, NFM is not estopped from denying coverage for the attorneys' fees award under the Policy. Further, as discussed below, the attorneys' fees are not covered by the Policy. Estoppel cannot be used to create coverage where no coverage otherwise existed. *General Casualty Co. of Wisconsin v. Burke Engineering Corp.*, 174 N.E.3d 561, 571 (Ill. App. 2020); *Schuster v. Occidental Fire*, 30 N.E.3d 458, 467 (Ill. App. 2015). Since NFM has no duty to indemnify Glencrest for the attorneys' fee award, estoppel cannot apply to create coverage. The estoppel argument fails for this additional reason.

Next, NFM, Hays, and Glencrest move for summary judgment on the issue of whether the Policy covers the award of attorneys' fees and costs to Hays.  NFM argues that it does not have a duty to indemnify Glencrest for the attorneys' fees award in the *Hays* Lawsuit.  Hays and Glencrest assert that the attorneys' fee award is clearly covered under the Policy.  The Court agrees with NFM's interpretation of the unambiguous Policy language.

The Court begins with the the insurance coverage provisions in the Policy which apply to "those sums that the 'insured' becomes legally obligated to pay as damages because of injury caused by an 'incident' to which this insurance applies" (Dkt. 116-1 at 30) and to "those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. 116-1 at 35.  The "Defense Provisions" section of the Policy states that NFM is responsible for paying "covered 'defense expenses.'" Dkt. 116-1 at 32 ("When we assume the defense of any 'claim' against the 'insured' that seeks damages covered by this policy . . . We will pay covered 'defense expenses'.").  While the definition of "Defense Expenses" includes "[a]ll court costs taxed against the 'insured' in the 'suit,'" the Policy also states that "these payments do not include attorneys' fees or attorneys' expenses taxed against the 'insured.'" *Id*. at 7.

Having considered the relevant Policy language as a whole, the Court concludes that the Policy does not provide coverage for Hays' attorneys' fee award against Glencrest.  "Courts must construe the policy as a whole and not interpret it in a manner that renders provisions of the policy meaningless." *Amico v. Allstate Corp.*, 155 N.E.3d 1132, 1136 (Ill. App. 2020); *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. S.Ct. 2010).  "Rather, policy provisions should be read in light of other relevant provisions to ascertain the parties' intent." *Amico*, 155 N.E2d. at 1136.  Following these principles of interpretation, the plain language of the Policy does not support Hays' and

19

Glencrest's reading. Hays and Glencrest argue that attorneys' fees qualify as "damages." But the Policy does not define "damages" to include attorneys' fees. Attorneys' fees are categorized as a type of litigation cost under the Policy, and the Policy expressly disclaims coverage for "attorneys' fees . . . taxed against the 'insured.'" This provision must be given effect. Interpreting "damages" to include payments for attorneys' fees would make the defense provisions' clause on that subject meaningless, which makes that reading unreasonable. Therefore, "damages" cannot mean attorneys' fees awarded against Glencrest as within the scope of the NFM's promise to indemnify for "damages because of injury" or "damages because of 'bodily injury.'"

Hays and Glencrest argue that the attorneys' fees language only applies to NFM's duty to defend, as opposed to the separate duty to indemnify. The Court rejects this argument as clearly the "defense provisions" apply to what NFM will pay, which speaks to indemnity as well as defense. Here, NFM assumed the defense of the *Hays* Lawsuit. In that event, the Policy provides NFM will pay covered "defense expenses," which under the Policy's definition of "defense expenses" specifically excludes attorneys' fees taxed against the insured. The trial court taxed Hays' attorneys' fees to Glencrest. Accordingly, the Policy does not provide coverage for Hays' attorneys' fees award against Glencrest. On this issue, NFM's summary judgment motion is granted, and Hays' and Glencrest's summary judgment motions are denied.[7]

## III.    Cooperation Clause

As a defense to coverage, NFM argues that Glencrest breached the cooperation clause in its Policy. NFM did not move for summary judgment based on a breach of the cooperation clause. Rather, Glencrest moved for summary judgment contending that no genuine issue of material fact

---

[7] In addition to attorneys' fees, the *Hays* Judgment included "costs and expenses in the amount of $43,232.13." Dkt. 119-5. The Policy covers "[a]ll court costs taxed" against Glencrest but does not cover "attorneys' expenses" taxed against Glencrest. On the current record, it is not clear what portion of the $43,232.13 amount is attributable to covered court costs.

exists regarding its compliance with the cooperation clause requirements of the Policy issued by NFM.  Relatedly, Hays moves for summary judgment asserting that NFM cannot demonstrate substantial prejudice as a result of Glencrest's alleged breach of the duty to cooperate.

Under Illinois law, "[a]ny condition in the policy requiring cooperation on the part of an insured is one of great importance . . . and its purpose should be observed." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. S.Ct. 1991).  "The concern is that the [injured] and the insured might collude, to the detriment of the insurance company." *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 745 (7th Cir. 1994).  To ensure that the insurer receives "fair and complete disclosure," an insured's duty to cooperate obligates it to "disclose all of the facts within [its] knowledge and otherwise to aid the insurer in its determination of coverage under the policy." *Piser v. State Farm Mut. Ins. Co.*, 938 N.E.2d 640, 647 (Ill. App. 2010).

"To avoid coverage under the policy based upon an insured's alleged failure to cooperate, the insurer must show that: (1) the insured breached the duty to cooperate; and (2) the insurer was 'substantially prejudiced' by that failure." *K&S Inv. Prop. Grp., LLC v. Westfield Ins. Co.*, 2021 WL 148876, at *3 (N.D. Ill. Jan. 15, 2021).  The refusal to cooperate must also be willful. *Porter v. USA Casualty Ins. Co.*, 2023 WL 3721209, at *2 (7th Cir. 2023).  "Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *Piser*, 938 N.E.2d at 648.

## A.     Breach of the Cooperation Clause

Glencrest argues that summary judgment should be entered in its favor with respect to NFM's defense that Glencrest breached the Policy's cooperation clause.  "Illinois courts acknowledge that, in some circumstances, an insured's refusal to cooperate might support a finding of summary judgment for the insurer[.]" *K&S Inv. Prop. Grp.*, 2021 WL 148876, at *3; *Piser*, 938

N.E.2d at 647 ("insured's failure to cooperate is indeed a valid defense."). "But generally, whether an insured has breached a cooperation clause is a question of fact." *K&S Inv. Prop. Grp.*, 2021 WL 148876, at *3. "[C]ourts reserve granting summary judgment based upon an insured's breach of a cooperation clause for only 'the most extreme of cases.'" *Id.* (quoting *Hartshorn v. State Farm Ins. Co.*, 838 N.E.2d 211, 214 (Ill. App. 2005)).

The duty to cooperate clause in the Policy at issue here required Glencrest as a condition to coverage, to "[c]ooperate with [NFM] in the investigation, settlement, or defense of the claim or suit." Dkt. 160 ¶ 2. The Policy further notes that if NFM invoked its right to "participate" in the defense, investigation, or settlement of any claim to which the Policy might apply, Glencrest was required to "fully cooperate" with those efforts. Dkt. 116-1, at 58. Moreover, the Policy requires full compliance with all of its terms before NFM can be sued. Dkt. 162-1 at 34, ¶ 70. Sufficiently cooperating with the defense of the *Hays Lawsuit* is therefore a condition precedent to NFM's obligations under the Policy. *Wood*, 21 F.3d at 744.

NFM has shown that there is a genuine issues of material fact regarding Glencrest's cooperation in defending the *Hays* Lawsuit. As a breach of the cooperation provision, NFM has identified Glencrest's actions, through Silverman, including failing to timely advise NFM that Hays was disclosing experts and Glencrest was not, agreeing to the late disclosure of Hays' experts, failing to identify expert witnesses in defense of Hays' claims, and improperly waiving Glencrest's jury demand. The conduct and motivation of Silverman in taking these actions are necessarily fact-intensive questions that present genuine issues regarding whether there was a breach of the cooperation clause.

First, Hays' expert disclosure deadline was June 10, 2020. The record shows that no expert was disclosed by Hays to Glencrest until May 21, 2021, and such disclosure was not revealed to

NFM until June 18, 2021, less than two weeks before trial. Dkt. 162-1 at 12, 18-20, ¶¶ 24, 39-42; Dkt. Doc. 150, Ex. 11 at ¶ 25. Also on June 24, 2021, Glencrest, through Silverman, represented to NFM that it would object to the late expert disclosure by Hays, but he failed to do so. Dkt. 162-1 at 21-22, ¶ 47. Instead, the record shows that Glencrest agreed to Hays' untimely expert disclosure, which was almost a year after the deadline and only approximately one month before trial. *Id*. at 2-26, ¶ 53; Dkt. 150-61, Ex. 7-B at 7-9, 11-12. Glencrest insists that "it should not have been a surprise to anyone that Hays would disclose an expert." Doc. 113 at 8. But this argument misses the point. The alleged lack of surprise about Hays' expert disclosure is irrelevant. What matters is that Hays did not timely disclose an expert and Glencrest agreed to the late disclosure. Glencrest claims that if it had objected to Hays' late expert disclosure, it would be reversible error to deny the late disclosure and the disclosure would have been permitted. Glencrest's argument is belied by the trial judge's rejection of Glencrest's request to identify an expert after its disclosure deadline.

Second, the record shows that Glencrest had already hired an expert witness for the *Hays* Lawsuit, Dr. Viglione, who had provided opinions to Glencrest and NFM refuting Hays' claims. Dkt. 162-1 ¶ 23. There is no evidence that any further expense was required to properly identify Dr. Viglione and his opinions. As a result of the failure to timely disclosure Dr. Viglione, he was later barred from testifying. *Id*. at ¶ 54.

Third, Glencrest maintains that its decision to waive a jury "was likely the right decision" to avoid a runway jury verdict. Doc. 113 at 9. But that fact is disputed and unclear from the record. Glencrest had paid for a jury demand and the jury waiver resulted in an imminent trial date. Regardless of whether the jury waiver was the right decision, the relevant question remains whether Glencrest's decision to do so without communicating with NFM constitutes a breach of

the cooperation clause. The record allows for competing inferences on that point, which the Court cannot resolve on summary judgment.

Finally, Glencrest claims there can be no failure to cooperate because NFM should have known that Glencrest would not competently defend the *Hays* Lawsuit in November 2020, when it sent a letter to NFM's counsel stating that it could not afford "expensive defense attorneys" or "hire expert witnesses." Doc. 113 at 5. But the letter Glencrest relies only specifically mentions a different lawsuit (*Webb*) where a policy demand had been made against a different Glen Heath entity (Glenshire). Doc. 116-2 at 21-22. Moreover, Glencrest had retain an expert (Dr. Viglione) for the *Hays* Lawsuit over a year prior to the letter being sent. Dkt.162-1 at 11-12, ¶ 23; Dkt. 150-14, Ex. 2-I at 1. While Glencrest asserts that it was "extremely upfront [in the letter] about is abilities and inabilities to provide the type of defense [NFM] envisioned, it also represented in the same letter that Silverman was an "excellent civil litigator" who "would not take on any case that it beyond his capabilities" and Glencrest would provide an "adequate defense." Doc. 116-2 at 21-22.

All of this presents a genuine issue of material fact. Viewing the evidence in the light most favorable to NFM, the Court cannot find that Glencrest has established as a matter of law that it did not breach its obligations to cooperate under the Policy. The sufficiency of Silverman's efforts is a question of fact, and therefore summary judgment in favor of Glencrest is inappropriate.

### B. Substantial Prejudice

With respect to whether NFM was substantially prejudiced by Glencrest's conduct, Hays moves for summary judgment against NFM. Hays argues that even if NFM demonstrated a breach of the cooperation clause, its duties under the Policy would not be extinguished because it cannot establish substantial prejudice. "Although the question of prejudice is ordinarily one of fact," it

may become a question of law, "amenable to disposition by summary judgment, if the undisputed facts allow only one reasonable conclusion." *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 815 (Ill. App. 2012). That is not the situation here. Because there are conflicting inferences concerning whether or not NFM was substantially prejudiced by Glencrest's actions, summary judgment is not appropriate.

Regarding whether Glencrest's actions substantially prejudiced NFM's defense of the underlying action, Hays asserts that the "adverse judgment and a verdict higher than the settlement demand was eminently foreseeable to NFM and resulted from NFM's own actions." Doc. 115-1 at 9. In support of its position, Hays highlights: (1) NFM's awareness of Glencrest's financial predicament as early as November 2020; (2) NFM's awareness of Glencrest's defense actions for nine months before it took over the defense and its rejection of Glencrest's invitations to take over the defense; (3) NFM's awareness of Glencrest's choice of Silverman as counsel in late 2020 and its reasons for hiring Silverman; (4) NFM could have exercised its right to assume control of the defense in October 2020 when Silverman first appeared as Glencrest's counsel; (5) NFM's mere disagreement with Silverman's strategic trial decisions; (6) as to Silverman's decision to waive a jury trial, waiver of a jury trial is a common strategy for a defendant in a wrongful death suit; (7) NFM could have assumed the defense long before it did and made whatever litigation decisions it preferred; and (8) Glencrest could have settled the case for less than $225,000 but NFM refused to settle the case. *See also* Dkt. 162-2 at 257:12-21.

In response to Hays' argument that NFM's actions caused the higher judgment, NFM argues that there are contrary facts and the evidence demonstrates that it was prejudiced by Glencrest's actions. Doc. 154 at 3-5 (citing Dkt. 151, ¶¶ 17-55). Further, NFM argues that Hays ignores the fact that: (1) the Policy did not require NFM to take over the defense at any time; (2)

Lubin's November 2020 letter regarding Glencrest's financial predicament referred specifically to a different case and different Glen Health related entity and represented that competent defense counsel would be provided; (3) NFM raised concerns about Silverman's experience and qualifications in October 2020; (4) Lubin represented to NFM that Silverman was an "excellent civil litigator," he had "confidence in his ability to litigate cases he's taken on, "[h]e would not take on any case beyond his capabilities" and he would "provide an adequate defense"; (5) Glencrest reported to NFM for most of the litigation that the case was defensible; and (6) Glencrest filed and paid a fee for a jury demand and agreeing to try the case to a judge resulted in an immediate trial without Glencrest being ready to present any meaningful defense. NFM further argues that its complaints go far beyond Silverman's "trial decisions." It also argues that its defense was additionally hampered in that Glencrest failed to keep NFM apprised of the status of the *Hays* Lawsuit and made unilateral decisions without apprising NFM that were detrimental to the defense, such as not timely disclosing an expert, not preparing any material defense, advocating against its own interests, agreeing to Hays' late disclosure of experts and making misrepresentations to the trial judge. *See* Doc. 154 at 6. As a result of Glencrest's alleged breaches, NFM argues it suffered substantial prejudice in the *Hays* Lawsuit, including its inability to have a trial by jury, its having to confront Hays' expert witnesses that should have been barred, and in not being permitted to present any expert testimony at trial.

These conflicting interpretations of the evidence present a genuine dispute of fact precluding summary judgment. *Harley–Davidson Motor Co., Inc. v. Powersports, Inc.,* 319 F.3d 973, 989 (7th Cir.2003) (holding that "the choice between reasonable inferences from facts is a function of a fact-finder"); *see also O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1366 (7th Cir.1993) (noting that "if the evidence is subject to conflicting interpretations, or if reasonable

people might differ as to its significance, summary judgment is not appropriate."). Here, there is a genuine factual dispute about whether NFM was substantially prejudiced by Glencrest's actions. Under these circumstances summary judgment is unwarranted.

Accordingly, the Court denies Glencrest's summary judgment motion on the breach of cooperation clause issue and Hays' summary judgment motion on the substantial prejudice issue.

## IV.    Equitable Estoppel

Hays next moves for summary judgment, contending that NFM is estopped from asserting any coverage defenses because its late assumption of Glencrest's defense subverted Glencrest's ability to protect its own interest. "Under equitable estoppel, if an insurer undertakes the defense of an action, and that undertaking results in some prejudice to the insured, an insurer may be estopped from asserting a defense that the policy did not cover the claim." *Essex Ins. Co. v. Structural Shop, Ltd.*, 2018 WL 1411071, at *6 (N.D. Ill. March 21, 2018). In order to establish equitable estoppel, "the insured must demonstrate that the insurer was actually or constructively aware of the facts or circumstances indicating noncoverage." *Id.* (quoting *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1104 (Ill. App. Ct. 1996)). Further, "the insured must establish the elements of estoppel: that he was misled by an act or statement of [the insurer], he reasonably relied on the conduct or representation, and he was prejudiced thereby." *Id.*

"Whether the insured has been prejudiced is a question of fact" that "rests with the insured and must be proved by clear, concise, and unequivocal evidence." *Essex Ins. Co.*, 2018 WL 1411071, at *6 (quoting *W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 879 (Ill. S.Ct. 1985)). "Prejudice will not be presumed from the insurer's mere entry of appearance and assumption of the defense." *Id.* (quoting *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 596 (Ill. S.Ct. 2013)). "Rather, prejudice will be found if the insurer's assumption of the defense induces the insured to

surrender her right to control her own defense." *Id.*; *Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F.Supp.2d 901, 904 (N.D. Ill. 2000) ("Although the estoppel doctrine typically does not apply where the insurer has no duty to defend an insured, where the insurer does undertake the defense of an action against the insured and causes some prejudice to the insured it may be estopped from asserting policy defenses.").

As an example, a district court found unequivocal evidence of an insured being induced to surrender control of its defense where the insurer had "assert[ed] total dominance over the underlying defense," by replacing the insured's chosen defense attorneys and "drastically chang[ing] [the insured's original] trial strategy." *Three I Truck Line*, 95 F. Supp. 2d at 907-08. Therefore, the insurer was equitably estopped from raising a late notice defense to coverage. *Id*. On the other hand, a district court found that the insurer did not usurped control where the insurer's representative took the lead in settlement negotiations, but the insured's counsel was present and did not voice disapproval. *Great W. Cas. Co. v. Rogers Cartage Co.*, 2001 WL 1607608, at *8 (N.D. Ill. Dec. 12, 2001).

Hays does not make arguments relating to Glencrest being misled or reasonably relying on NFM's conduct. Because Hays has failed to establish these elements, summary judgment on the equitable estoppel issue is not appropriate. Moreover, genuine issues of material fact preclude summary judgment regarding whether Glencrest was prejudiced by NFM's assumption of its defense. Hays argues that NFM's handling of settlement efforts, the appointment of Attorney Patton to lead Glencrest's defense, and NFM's failure to appeal the judgment entered against Glencrest in the *Hays* Lawsuit shut Glencrest out of its own defense. Doc. 115-1 at 5. Regarding settlement, Hays asserts that NFM was aware of a $225,000 settlement demand by Hays as early

as December 4, 2020 but never offered a single dollar towards settlement even though Glencrest recommended NFM settle for that amount.

None of these arguments show that there is no genuine dispute of material fact on the critical issue: whether NFM asserted "total dominance over the underlying defense" in the *Hays* Lawsuit. *Three I Truck Line*, 95 F.Supp.2d at 907. As to Hays' argument that Glencrest could not try its own case because Patton was appointed to lead Glencrest's defense on June 28, 2021, the Court rejects the notion that NFM's appointment of Patton alone supports a finding of prejudice. *See Standard Mut. Ins. Co.*, 989 N.E.2d at 596 ("Prejudice will not be presumed from the insurer's mere entry of appearance and assumption of the defense."). Moreover, it is undisputed that Silverman did appear and participate during the first day of trial, and Lubin appeared on the second day of trial. Dkt. 160, ¶¶ 52, 53. Second, Hays asserts that NFM did not appeal or notify Glencrest that it would not be appealing. However, the evidence indicates that on January 6, 2022, NFM advised Glencrest of the appeal deadline of January 10 and that NFM did not plan to appeal. Glencrest did not respond to the email. Dkt. 160, ¶ 64. Glencrest argues it could not appeal, but there is no evidence that Glencrest could not have appealed or that NFM precluded it from doing so. Finally, Hays argues that "[t]hroughout the entirety of the litigation, even prior to NFM's assumption of the defense, NFM's conduct precluded Glencrest from taking it preferred course of action: settlement." Dkt. 115-1 at 4. But this is disputed. NFM emphasizes that throughout most of the litigation, and up until shortly before trial, Glencrest maintained that Hays' claims against Glencrest were defensible and settlement was not recommended. Dkt. 151, NFM SOAF, ¶¶ 20-23. A reasonable factfinder could decide that NFM's decision to purse Glencrest's original counsel's strategy not to settle the case was reasonable. Accordingly, genuine issues of material fact on the control and prejudice issue remain.

*Three I Truck Line*, cited by Hays, is distinguishable. *Three I Truck Line* involved an excess insurer that retained counsel on the eve of trial to defend the insured, who drastically changed the trial strategy that had been prepared by prior counsel, did not present any of the motions in limine prepared by prior counsel, did not object to any of the plaintiffs' motions in limine, presented no argument in its opening statement contesting plaintiff's damages, did not cross-examine the plaintiffs' two experts as to damages, did not call any of the three expert witnesses that prior counsel had engaged on damages-related issues, nor did it engage or present any other expert witnesses, and also did not contest the amount of plaintiffs' damage claims during closing arguments, after which the jury returned a $42.5 million verdict. *Three I Truck Line*, 95 F.Supp.2d at 903-04. Also, the excess insurer waited until after closing arguments and the jury was out to file its declaratory judgment action. *Id*. at 904. The district court held that the insurer's assumption and retention of "total dominance over the underlying action" prejudiced the insured as a matter of law and justified estopping the excess insurer from raising a late notice defense to the insured's coverage claims. *Id*. at 907-08.

If the Court views the facts in the light most favorable to NFM, which it must at this juncture, this case is the reverse of *Three I Truck Line*. Rather than NFM inducing Glencrest to "surrender [its] defense" and prejudicing Glencrest by taking over on the eve of trial, here it was Glencrest who presented NFM with a situation in which prejudice was already established and NFM assigned counsel under difficult circumstances and attempted to recover rights that were lost by Glencrest's alleged conduct. Under NFM's version of the facts, Glencrest failed to cooperate with NFM, drastically changed it prior counsel's plan for defense of the case, took numerous actions against the interests of the defense without advising NFM, and breached the cooperation clause before NFM took over the defense, leaving NFM with what amounted to a laydown at trial,

to which the attorney retained by NFM to defend the case made every possible effort to undue and put on an aggressive defense at trial. Dkt. 151 at 25-34, ¶¶ 25-49. Moreover, Glencrest's chosen counsel did in fact appear at and participate in the trial, and NFM updated Glencrest on trial and post-trial proceedings. *Id*. at ¶¶ 52-53, 57, 60, 64. The Court cannot discount NFM's version of events as a matter of law. As result, the Court denies Hays' summary judgment motion on the equitable estoppel issue.

## V.     Glencrest's Affirmative Defenses

Finally, NFM moves for summary judgment as to three of Glencrest's affirmative defenses: unclean hands, breach of fiduciary duty, and public policy.

First, NFM contends there is no evidence supporting an unclean hands defense. The doctrine of unclean hands "applies if the party seeking equitable relief is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought if that misconduct is connected with the transaction at issue." *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 908 (7th Cir. 2017) (quoting *Long v. Kemper Life Ins. Co.*, 553 N.E.2d 439, 441 (Ill. App. 1990)). In response, Glencrest asserts that NFM "evidently knew that it was going to refuse to pay both the judgment at the end of litigation, and specifically knew that it was going to refuse to pay attorneys' fees, and nonetheless refused to participate reasonably in settlement negotiations." Doc. 126 at 14. According to Glencrest, "this is both bad faith and fraud." *Id*. Glencrest fails to cite to the record in support of its argument. Moreover, Glencrest cites no authority holding that an insurer's mere refusal to settle and denial of coverage, without more, amounts to the kind of fraud or bad faith contemplated by the unclean hands doctrine. Glencrest has presented no evidence to create a genuine dispute of material fact that NFM reviewed the *Hays* settlement proposal in bad faith or that its refusal to settle was fraudulent. Rather, NFM relied on Glencrest's original counsel's

advice, supported by Dr. Viglione's opinion, that the *Hays* Lawsuit was defensible. Dkt. 150-16 at 1, 8; Dkt. 150-17 at 1, 8. Further, Glencrest fails to raise a genuine dispute of material fact that NFM acted in bad faith when it refused to indemnify Glencrest. There is a genuine dispute with respect to whether Glencrest breached the cooperation clause. Moreover, the Court has determined that the Policy does not provide coverage for the attorneys' fees awarded in the underlying action. Because NFM had a legitimate coverage dispute as well as a genuine dispute as whether Glencrest complied with the cooperation clause in the Policy, Glencrest does not raise a triable issue of material fact to suggest that NFM acted in bad faith or engaged in fraud. As a result, the Court grants NFM's motion for summary judgment on Glencrest's unclean hands affirmative defense.

Second, NFM argues summary judgment is proper on Glencrest's breach of fiduciary duty affirmative defense because "it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill. App. 2004). Glencrest concedes no fiduciary relationship is present "simply by the fact of an insurer and insured relationship," but suggests a fiduciary duty may arise when one party places trust and confidence in another. Dkt. 126 at 15. A fiduciary relationship by "special relationship" may arise where a plaintiff "places trust and confidence" in the defendant so that the defendant attains "a position of influence and superiority over" the plaintiff. *Illinois State Bar. Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 480 (Ill. App. 2012). A "position of superiority may arise by reason of friendship, agency, or experience." *Id.*

Glencrest argues in a single sentence that NFM "was in a position of superiority over Glencrest in that Glencrest was unable to agree to any settlement amount without [NFM's] permission, which was withheld." Dkt. 126 at 15. Glencrest does not argue, let alone cite facts to support, its apparent position that Glencrest placed trust and confidence in NFM by reason of

friendship, agency, or experience. Moreover, Glencrest's single conclusory sentence does not adequately develop its argument that NFM was in a position of superiority and influence over Glencrest.[8] For this reason, Glencrest's argument on the superiority element is waived. *Protect Our Parks, Inc. Buttigieg*, 97 F.4th 1077, 1098 (7th Cir. 2024) ("a skeletal argument, really nothing more than an assertion, does not preserve a claim."); *Truelove v. Berryhill*, 753 F. App'x 393, 397-98 (7th Cir. 2018) (single-sentence argument without record support deemed waived). Without more, the Court finds that Glencrest has failed to create a genuine dispute of material fact as to the existence of a fiduciary duty arising from a relationship of trust and confidence. The Court therefore grants NFM's motion as to this defense.

Third, Glencrest raises an affirmative defense that allowing an insurer to disclaim attorneys' fees awarded to the insured under the Nursing Home Act violates public policy. Glencrest asserts there are two reasons supporting its defense, but both fail to support Glencrest's argument factually and legal. Glencrest first argues that permitting NFM to disclaim coverage for attorneys' fees would encourage NFM's "type of behavior" in *Hays*, which "ensured the matter could not settle," "forced it to trial," and "ensured a ruling in Hays' favor." Dkt. 126 at 15. Therefore, according to Glencrest, "an insurer that disclaims attorneys' fees can escape paying a larger amount by simply withholding its permission to settle and forcing the matter to trial. This would allow the insurer to pay a small amount [in damages] and leave the insured paying" substantial attorneys' fees. *Id*. at 15-16. But Glencrest cites no evidence in the record to support its assertion. Glencrest cannot create a genuine dispute of fact by claiming, without evidentiary support, that NFM's conduct "ensured the matter could not settle," "forced it to trial," and "ensured

---

[8] The only case Glencrest cites is *Cavenagh* for the general legal standards on fiduciary duty by special relationship. And in *Cavenagh*, the court rejected an insured's breach of fiduciary duty by special relationship claim against his insurer.

a ruling in Hays' favor." *Sanchez v. City of Chicago*, 2024 WL 4346381, at \*19 (N.D. Ill. Sept. 30, 2024). ("Statements in a brief are not evidence and are not entitled to any evidentiary weight."). Moreover, contrary to Glencrest's assertion, Hays sought far more in compensatory damages than he later sought in fees. Dkt. 162-1 at 29, ¶ 55.

Glencrest next argues that the disclaimer of attorneys' fees in the Policy violates public policy because insurance policies inure to the benefit not only of the insured but also to the benefit of nursing home residents. Glencrest cites, *Hertz Corp. v. Garrott*, 606 N.E.2d 219 (Ill. App. 1992). *Hertz* is factually distinguishable and does not support Glencrest's contention that the disclaimer of attorneys' fees in the Policy violates public policy. In *Hertz*, the Illinois Appellate Court held that a car rental insurance policy's exclusion based upon driving while intoxicated was void as against public policy. *Id*. at 223-24. The *Hertz* court pointed out that "such sanctions work a hardship upon the general public and, at the same time, benefit the rental agency and/or its insurer." *Id.* at 224. Based on *Hertz*, Glencrest argues that the Court should find the attorneys' fees disclaimer void as against public policy because enforcing the disclaimer would harm successful nursing home negligence plaintiffs. *Hertz* is not persuasive here because it did not address an insurance policy disclaimer of attorneys' fees. Nor does Glencrest cite any case that found an attorneys' fees disclaimer in an insurance policy violates public policy. Moreover, adopting Glencrest's argument would void any insurance disclaimer if that disclaimer has the effect of harming an innocent third party. As there are no genuine issues of material fact and the Glencrest has not shown that the Policy's attorneys' fees disclaimer violates public policy, the Court grants NFM's motion for summary judgment on Glencrest's public policy defense.

## <u>CONCLUSION</u>

For the reasons stated above, Glencrest's motion for summary judgment [113] in Case No. 21 C 3653 is denied, Hays' motions for summary judgment [115] in Case No. 21 C 3653 and [32] in Case No. 22 C 1697 are granted in part and denied in part, and NFM's motion for partial summary judgment [117] is granted in part and denied in part.

**SO ORDERED.**

Dated:  October 8, 2024

_____

Sunil R. Harjani
United States Magistrate Judge